# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 13, 2006          Decided July 14, 2006

No. 05-1096

AMERICAN TELEPHONE AND TELEGRAPH COMPANY,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

QWEST SERVICES CORPORATION, ET AL.,
INTERVENORS

———

On Petition for Review of an Order of the
Federal Communications Commission

———

*David W. Carpenter* argued the cause for petitioner. With him on the briefs were *David L. Lawson*, *James P. Young*, and *Judy Sello*.

*Richard K. Welch*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Thomas O. Barnett*, Acting Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *Samuel L. Feder*, General Counsel, Federal Communications Commission, *John E. Ingle*,

Deputy Associate General Counsel, and *Laurence N. Bourne*, Counsel. *Jacob M. Lewis*, Attorney, entered an appearance.

*Michael K. Kellogg* argued the cause for intervenors. With him on the brief were *Sean A. Lev*, *Michael E. Glover*, *Edward H. Shakin*, *Bennett L. Ross*, *Robert B. McKenna*, *Bradford M. Berry*, *Samir C. Jain*, and *Lisa R. Youngers*. *Scott K. Attaway* and *Jeffrey G. DiSciullo* entered appearances.

Before: RANDOLPH and GARLAND, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*:  At issue in this petition for review is the proper regulatory classification of "enhanced" prepaid calling cards, a product AT&T introduced in 1994 and no longer sells.  Prepaid calling cards allow purchasers to make long-distance telephone calls without subscribing to a long-distance service or using a credit card.  Instead, the purchaser buys a fixed number of minutes at a fixed price.  When he wants to make a call, he dials a toll-free number printed on the card to reach the service provider's "platform."  When prompted by the platform, the user enters a unique identification number associated with the card, and then dials the number he is trying to reach.  The "platform" routes the call, and the duration of the call is deducted from the minutes remaining on the card.

AT&T's "enhance[ment]" to this service was the addition of an advertising (or other) message the card user heard before his call was completed.  AT&T provided the cards at wholesale rates to large retail outlets such as Wal-Mart and other third party distributors.  These distributors could design or choose the advertising message that was played when one of their purchasers used the card.  At the time of the Federal

Communications Commission's action in this case, AT&T stored and played more than one hundred different messages from its distributors, each matched to the appropriate cards.

The events leading to this case began when AT&T became embroiled in a dispute with the Regulatory Commission of Alaska over AT&T's refusal to pay intrastate access charges on enhanced prepaid calling card calls between two parties within the same state. Seeking the upper hand in this dispute, AT&T sought a declaratory ruling from the Commission that its service was "jurisdictionally interstate."[1] *See* 47 C.F.R. § 1.2. Among other things, AT&T asserted that its calling cards were solely an "information service," 47 U.S.C. § 153(20). The Commission disagreed. It found that AT&T's enhanced prepaid calling card service is a "telecommunications service" under the Communications Act of 1934 because it does not "offer" to the card user "anything other than telephone service, nor is the customer provided with the 'capability' to do anything other than make a telephone call." AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Servs., 20 F.C.C.R. 4826, 4830 (2005) ("*Order*").[2] The

---

[1] A ruling in AT&T's favor would have meant that it had to pay only lower interstate access charges. The Commission ordinarily determines the jurisdictional nature of calling card calls based on the location of the calling and called parties, not the actual transmission path of the phone call. *See* The Time Machine, 11 F.C.C.R. 1186, 1190 (1995). The Commission's jurisdictional ruling – that this framework applied to AT&T's enhanced prepaid calling cards despite their advertising component – is not before us. *See* AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Servs., 20 F.C.C.R. 4826, 4833-36 (2005).

[2] A "telecommunications service" is "the offering of telecommunications for a fee directly to the public," 47 U.S.C. § 153(46), with "telecommunications" defined as "the transmission, between or among points specified by the user, of information of the

Commission also determined that "the provision of the advertising message is an adjunct-to-basic service and therefore not an 'enhanced service' under the Commission's rules." *Id.* at 4831. Taking note of AT&T's statement that it had "sav[ed]" about $160 million in universal service fund contributions "since the beginning of 1999" by characterizing its enhanced prepaid calling cards as "information services," *id.* at 4828 n.14 (quoting AT&T's November 2004 SEC Form 10-Q), the Commission directed AT&T to repay "any past due universal service amounts." *Id.* at 4836.[3]

AT&T concedes that the Commission's classification ruling is reasonable; it does not quarrel with the Commission's interpretation of the statutory and regulatory texts or its determination that the enhanced prepaid calling card is an "adjunct-to-basic" service. Instead, AT&T claims that the Commission improperly made its ruling retroactive.

The Commission action constituted adjudication. Retroactivity is the norm in agency adjudications no less than in judicial adjudications. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency."); *see also NLRB v. Bell Aerospace*

---

user's choosing, without change in the form or content of the information as sent and received." *Id.* § 153(43). An "information service," on the other hand, is "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing or making available information via telecommunications." *Id.* § 153(20).

[3] "Every telecommunications carrier that provides interstate *telecommunications services*" must "contribute, on an equitable and non-discriminatory basis" to the federal universal service fund. 47 U.S.C. § 254(d) (emphasis added). Providers of information services are exempt.

*Co.*, 416 U.S. 267, 294-95 (1974). As Judge Friendly observed in *NLRB v. Majestic Weaving Co.*, 355 F.2d 854, 860 (2d Cir. 1966), "courts have not generally balked at allowing administrative agencies to apply a rule newly fashioned in an adjudicative proceeding to past conduct." Nevertheless, he continued, "judicial hackles" are raised when "an agency alters an established rule defining permissible conduct which has been generally recognized and relied on throughout the industry that it regulates." *Id.* For our part we have drawn a distinction between agency decisions that "substitut[e] . . . new law for old law that was reasonably clear" and those which are merely "new applications of existing law, clarifications, and additions." *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1109 (D.C. Cir. 2001) (internal quotation marks omitted). The latter carry a presumption of retroactivity that we depart from only when to do otherwise would lead to "manifest injustice." *Id.*; *see also Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc); 2 RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 13.2, at 881-82 (2002).

The Commission's decision in this case did not change settled law; AT&T does not and indeed cannot point us to a settled rule on which it reasonably relied. *See Williams Natural Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993); *Clark-Cowlitz*, 826 F.2d at 1083-84. Before the *Order*, the Commission had not determined the regulatory classification of AT&T's service or a precise analogue. AT&T argues that the Commission affirmed AT&T's *own* classification of the calling cards as an "enhanced" service contained in a 1994 "cost allocation manual" the Commission's staff accepted for filing, without objection. But as the Commission noted, this filing did not fix the regulatory classification of the calling card service beyond the purpose of the manual. *See Order*, 20 F.C.C.R. at 4837. Unlike the current situation, in 1994 AT&T was subject to dominant carrier regulation that required cost allocation, the

universal service fund was not yet in existence, and the statutory definitions of telecommunications and information services had not been fixed. *Id.* AT&T's reliance on this old filing, in the face of such significant legal change, and without authoritative Commission action beyond its staff's "acceptance" of the filing, could not have been reasonable. *See Verizon*, 269 F.3d at 1110.

Because the classification of AT&T's enhanced prepaid calling card service was before the Commission for the first time, AT&T might gain some support if the Commission's precedents clearly pointed toward the opposite result. But they did not. Here the Commission relied primarily on the statutory definitions of telecommunications and information services, finding that no "offer" of an information service was made to the end users of the cards. *See Order*, 20 F.C.C.R. at 4830. In the past, the Commission made it clear that this was the analysis it would follow. *See* Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, 17 F.C.C.R. 4798, 4822 (2002) ("[W]e conclude that the classification of cable modem service turns on the nature of the functions that the end user is offered."). AT&T's claim that it relied on the language of the Commission's "enhanced services" regulation, 47 C.F.R. § 64.702(a), rings hollow.[4] The Commission viewed this regulatory definition, crafted before the Telecommunications Act of 1996 created a statutory class of "information services," as congruent with the current statute. *See Order*, 20 F.C.C.R. at 4830 & n.26; *see also* Implementation of the Non-Accounting Safeguards of Sections 271 and 272 of the Communications Act

---

[4] An "enhanced service" is one "offered over common carrier transmission facilities . . . which employ[s] computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information." 47 C.F.R. § 64.702(a).

of 1934, As Amended, 11 F.C.C.R. 21,905, 21,955 (1996) ("[T]he differently-worded definitions of 'information services' and 'enhanced services' can and should be interpreted to extend to the same functions."). Although the Commission treated previously-classified enhanced services as information services under the new terms of the statute, *see id.*, it could not change the meaning of the 1996 Act with its prior regulation. To the extent that AT&T relied on the Commission doing just that, it was taking its chances.

The Commission also determined that even under its older "enhanced services" regime, AT&T's advertising service was "adjunct-to-basic" and therefore not an information service. *See Order*, 20 F.C.C.R. at 4831. The Commission's precedents in this area are a mixed bag. On the one hand, AT&T notes Commission language suggesting that services are not adjunct-to-basic unless they provide information used "in the provision and management of the customers' telephone service," N. Am. Telecomms. Ass'n Pet. for Declaratory Ruling, 3 F.C.C.R. 4385, 4391 (1988) ("*NATA Centrex Order*"). Yet in the same order, the Commission also stated that an adjunct-to-basic service "facilitate[s] the provision of basic services without altering their fundamental character," *id.* at 4388, the very test it applied in the *Order* under review. *See* 20 F.C.C.R. at 4831. As to the Commission's application of these various formulations, it is difficult to discern any clear policy. The Commission has found that an interactive "talking yellow pages" directory service is enhanced, *see* Nw. Bell Tel. Co. Petition for Declaratory Ruling, 2 F.C.C.R. 5986, 5987-88 (1987), but that ordinary directory assistance is adjunct-to-basic, *see, e.g.*, N. Am. Telecomms. Ass'n Petition for a Declaratory Ruling, 101 F.C.C.2d 349, 360 (1985). It has found that a service providing additional billing information upon request is enhanced, *see NATA Centrex Order*, 3 F.C.C.R. at 4391, but that a service providing a time of day announcement is adjunct-to-basic, *see* Pac. Nw. Bell Tel Co.

Petition for Delcaratory Ruling to Clarify the Regulation Status of Time-of-Day Service, 1986 WL 292485, at *2 (Mar. 4, 1986). The Commission's rulings reflect a highly fact-specific, case-by-case style of adjudication. Its determination that AT&T's advertising add-on to prepaid calling cards is adjunct-to-basic is simply the latest application of this approach.

AT&T also was on notice that the Commission might require it to pay universal service fees based on its calling card revenues. The Commission cited *The Time Machine, Inc.*, 11 F.C.C.R. 1186, 1192-93 (1995), and its "universal service contribution forms" as evidence that prepaid calling cards are ordinarily considered telecommunications services and that the revenues derived from those services must be included when calculating universal service support. *Order*, 20 F.C.C.R. at 4837. AT&T argues that the same forms exempt enhanced services revenues. This may be the case, but there is also Commission law stating that when a telecommunications service is offered alongside an information service, the provider must continue to contribute to the universal service fund based on "end-user telecommunications revenue . . . exclud[ing] enhanced services [revenue]." Policy and Rules Concerning the Interstate, Interexchange Marketplace, 16 F.C.C.R. 7418, 7446 (2001); *see also id*. at 7447-48. At the very least, the Commission's reasoning demonstrates that there was not a clear rule of law exempting AT&T's "enhanced prepaid calling cards" from universal service contribution.

In short, the *Order* "represents a new policy for a new situation, rather than . . . a departure from a clear prior policy." *Williams Natural Gas Co.*, 3 F.3d at 1554 (internal quotation marks omitted). The Commission's decision to apply its policy to the case before it was not manifestly unjust. Rather than exercising caution in light of ambiguous agency law, AT&T unilaterally chose not to pay universal service contributions

without Commission sanction or approval. In doing so it assumed the risk of an adverse Commission decision. *See Global NAPs, Inc. v. FCC*, 247 F.3d 252, 260 (D.C. Cir. 2001). This is especially so in light of our long-standing principle that "the breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of . . . remedies and sanctions." *Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 159 (D.C. Cir. 1967). The petition for review is denied.

*So ordered.*