# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 2, 2007        Decided December 4, 2007

No. 06-1274

QWEST SERVICES CORPORATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

VERIZON COMMUNICATIONS, ET AL.,
INTERVENORS

———

Consolidated with
06-1298, 06-1309

———

On Petitions for Review of an Order of the
Federal Communications Commission

———

*Steven J. Perfrement* argued the cause for petitioner
Qwest Services Corporation. With him on the briefs was
*Robert B. McKenna*.

*Bruce D. Sokler* argued the cause for petitioner iBasis, Inc. On the briefs were *Michael H. Pryor*, *Kemal Hawa*, *Robert G. Kidwell*, and *Helen Gerostathos Guyton*.

*Richard K. Welch*, Associate General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Thomas O. Barnett*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *Samuel L. Feder*, General Counsel, Federal Communications Commission, *John E. Ingle*, Deputy Associate General Counsel, and *Laurel R. Bergold*, Counsel. *Eric D. Miller*, Counsel, entered an appearance.

*Helgi C. Walker* argued the cause for intervenors AT&T Corporation and Verizon Communications Inc. With her on the brief were *Michael E. Glover*, *Edward Shakin*, *Christopher M. Miller*, *Eve Klindera Reed*, *Gary L. Phillips*, *David W. Carpenter*, and *James P. Young*. *Christopher T. Shenk* and *David L. Lawson* entered appearances.

Before: SENTELLE and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: This case involves phone calls made with two kinds of prepaid calling cards. The first kind uses internet protocol ("IP") technology to transport part or all of a telephone call ("IP-transport cards"). The second offers a menu-driven interface through which users can either make a call or access several types of information ("menu-driven cards"). In the order under review the Federal Communications Commission determined that both types of cards offer "telecommunications services" and

3

that providers of those cards are therefore subject to access charges, Universal Service Fund contributions, and other obligations under the Communications Act. *In the Matter of Regulation of Prepaid Calling Card Services*, 21 FCC Rcd 7290 (2006) ("Order").

These consolidated petitions for review do not challenge the substantive merits of that decision. Rather, they attack the Commission's decisions as to the retroactivity of its substantive interpretation of the statute. iBasis contests the decision to make the Order retroactive as to IP-transport cards, and Qwest contests the decision to make it prospective-only as to menu-driven cards.

We find no manifest injustice in applying the Order retroactively to IP-transport cards and thus deny iBasis's petition for review. But we can discern nothing in the record that justifies the Commission's decision to foreclose retroactive application of the Order's statutory interpretation to menu-driven cards in the calculation of a provider's liability for access charges. Accordingly, we grant Qwest's petition for review and vacate the Order insofar as it purports to bar such an application.

\* \* \*

Under the Communications Act of 1934, as amended by the Telecommunications Act of 1996, providers of telecommunications services are regulated as common carriers, but providers of information services are not. 47 U.S.C. § 153(20), (44), (47); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975 (2005); see also *Brand X*, 545 U.S. at 976-77 (describing the historical basis for that distinction). In 2003, AT&T petitioned the Commission for a declaratory ruling that its "enhanced"

prepaid calling cards—enhanced by the addition of an advertising message from the card's retailer—were "jurisdictionally interstate" and provided information services. See *Am. Tel. & Tel. Co. v. FCC*, 454 F.3d 329, 331 (D.C. Cir. 2006) ("*AT & T*"). While that petition was still pending, AT&T alerted the Commission that it had developed menu-driven cards and was considering the transport of calls via prepaid calling cards using IP technology. Letter from Judy Sello, Senior Attorney, AT&T, to Marlene H. Dortch, Secretary, FCC (Nov. 22, 2004). AT&T amended its petition to add a request for a declaratory ruling that these new variations on its prepaid calling cards would be treated as interstate information services. *Id.*

On February 23, 2005, the Commission released an Order and Notice of Proposed Rulemaking in response to AT&T's petition. *AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 FCC Rcd 4826 (2005) ("Prepaid Card Order" or "NPRM"). As to the enhanced prepaid cards described in AT&T's original petition, the Commission determined that those cards offered telecommunications services—not information services—and that the calls made with them are intrastate when they originate and end in the same state, regardless of a call's actual route. *Id.* at 4830 ¶ 14, 4833 ¶ 22; see also *AT & T*, 454 F.3d at 331. The Commission declined, however, to extend its declaratory ruling to menu-driven and IP-transport cards; it stated that "[r]ather than try to address each possible type of calling card offering through a declaratory ruling," the Commission was initiating a rulemaking "to consider the classification and jurisdiction of new forms of prepaid calling cards." *Id.* at 4826 ¶ 2. Opening a new docket for that proceeding, the Commission requested comment on the proper classification of menu-driven and IP-transport cards. *Id.* at 4839-41 ¶¶ 38-43.

The Commission released the Order at issue here on June 30, 2006. In a part of that Order that it labeled a declaratory ruling, the Commission announced that IP-transport and menu-driven cards "are telecommunications services and that their providers are subject to regulation as telecommunications carriers," 21 FCC Rcd at 7293 ¶ 10, and thus subject to the obligation to pay access charges to local exchange carriers, *id.* at 7300 ¶ 27. It also indicated that jurisdiction over calls would be governed by the traditional end-to-end analysis, meaning that calls made with prepaid cards that originate and end in the same state are intrastate, regardless of a call's actual route. *Id.* at 7290 ¶ 1, 7300 ¶ 27; see also Prepaid Card Order, 20 FCC Rcd at 4827 ¶ 5. Both aspects of the substantive decision—the requirements that IP-transport and menu-driven card providers pay access charges and that they pay the (generally higher) intrastate access charges for those calls when appropriate—were thus against iBasis's interests as a provider of IP-transport cards and in favor of Qwest's interests as a local exchange carrier of calls made by both types of cards.

Turning to the issue of remedy, the Commission said that a declaratory ruling was, notwithstanding the proceedings' launch as a rulemaking, "a form of adjudication" and recognized that "[g]enerally, adjudicatory decisions are applied retroactively." *Id.* at 7304-05 ¶ 41. The Commission decided that it would apply that "general rule" to IP-transport cards but would "decline to give retroactive effect to our ruling on menu-driven cards to avoid a manifest injustice." *Id.* at 7305 ¶ 41. iBasis and Qwest both take issue with the retroactivity rulings, which in each case are adverse to their respective interests. They filed petitions for review; AT&T and Verizon intervened in opposition to Qwest. We consolidated the petitions.

* * *

iBasis argues that the Order announces a rule rather than an adjudicatory order, and thus that it cannot apply retroactively, citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208-09 (1988). In the alternative, iBasis argues that even if the Order was an adjudication, its retroactive application to IP-transport cards used before the Commission announced its decision works a manifest injustice. We reject both contentions.

The section of the Order that classifies IP-transport and menu-driven cards as telecommunications services is labeled a declaratory ruling. The Commission is authorized to issue a declaratory ruling "to terminate a controversy or remove uncertainty," 5 U.S.C. § 554(e); see also 47 C.F.R. § 1.2, and there is no question that a declaratory ruling can be a form of adjudication, see, e.g., *AT & T*, 454 F.3d at 332. iBasis argues that—despite the Commission's characterization of its action—the Order did not qualify as an adjudication because the Commission's initial pronouncement purporting to start a rulemaking, the process it employed, and the result it reached all bespeak a rulemaking. iBasis's argument, then, is that if it walks like a rule and talks like a rule, it must be a rule.

iBasis is clearly correct that the process started out as a rulemaking and in part preserved that form. But the Commission indisputably split the proceeding into a dual one, half rulemaking and half adjudication, or at least purported to do so. iBasis appears to assume that such a split is inherently improper. But it points to no case and to nothing in the Administrative Procedure Act or Communications Act that bars such a bifurcation. Obviously if a party adversely affected by the adjudication argued that the switch deprived it of any right to which it would be entitled in an adjudication, we would have to assess that deprivation under conventional

principles governing adjudications. But iBasis's opening brief, except for the circular argument that the switch triggered a traditional characteristic of adjudication (the possibility of retroactive application), pointed to no such deprivation.

In its reply brief iBasis finally identified a possible deprivation: the NPRM's failure to provide interested parties with notice that there was a risk of retroactive effect. Properly raised, this would be an extremely serious claim against the Commission's curious way of doing business. But we ordinarily do not consider claims raised for the first time in a reply brief, *Carter v. George Washington Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004), and we note here that even iBasis's reply brief fails to point to any fact or argument that it might have adduced materially beyond what the Commission actually discussed. For reasons unknown to us, other participants in the proceedings filed materials on whether Commission action should have retrospective effect. See Joint Appendix ("J.A.") 338-39 (Sprint), 342-43 (Verizon), 344-46 (AT&T), 347 (Verizon), 348-52 (Verizon), 353-65 (AT&T).

iBasis also argues that such a broadly applicable order as in fact came forth—determining the classification of all IP-transport and menu-driven cards—can only take the form of a rule, and thus must be prospective only. There is no such general principle. Most norms that emerge from a rulemaking are equally capable of emerging (legitimately) from an adjudication, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294-95 (1974), and accordingly agencies have "very broad discretion whether to proceed by way of adjudication or rulemaking," *Time Warner Entertainment Co. v. FCC*, 240 F.3d 1126, 1141 (D.C. Cir. 2001). iBasis identifies nothing in the problem of applying a statute to two discrete kinds of prepaid calling cards that requires use of rulemaking.

Apart from its attack on the switch from rulemaking to adjudication, iBasis argues the Commission's determination that IP-transport cards offer telecommunications services cannot be applied retroactively because to do so works a manifest injustice. We review an agency's conclusions on manifest injustice with "'no overriding obligation to the agency['s] decision.'" *Maxcell Telecom Plus, Inc. v. FCC*, 815 F.2d 1551, 1554 (D.C. Cir. 1987) (alteration in original) (quoting *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972)). Despite proceeding without deference to the Commission's determination, we find that retroactive application of the Order to IP-transport cards does not work a manifest injustice for the very same reasons that persuaded the Commission. As the Commission put it: "These calling cards offer the customer no capability to do anything other than make a telephone call, and therefore they are just like basic prepaid calling cards that the Commission always has treated as telecommunications services." Order, 21 FCC Rcd at 7305 ¶ 43. Moreover, the Commission had already determined that the IP-transport of *traditional* long-distance calls "did not change the regulatory classification of the service at issue." *Id.* at 7306 ¶ 43. And while that previous determination was not strictly applicable to IP-transport cards, it certainly "provided ample notice that merely converting a calling card call to IP format and back does not transform the service from a telecommunications service to an information service." *Id.* Under those circumstances, it works no manifest injustice (indeed, no injustice at all) to apply the declaratory ruling retroactively to IP-transport card providers.

\* \* \*

The classification of calls made via menu-driven prepaid calling card affects Qwest as a local exchange carrier that

provides access for the origin and termination of such calls over its facilities. As we mentioned earlier, the Commission's substantive decision was in Qwest's favor: the determination that IP-transport and menu-driven cards provide telecommunications services meant that Qwest could collect access charges, and the Order also clarified that for calls originating and ending in a single state card providers were liable for intrastate access charges, which according to the parties are typically higher than for interstate service. Here Qwest objects solely to that part of the Order precluding retroactive application of the ruling to menu-driven cards.

Except to the extent that the Order directly adjudicated a specific controversy between Qwest and a provider of menu-driven prepaid calling card services, however, one might question whether Qwest has standing to challenge the Order on this basis. After all, the Commission's *opinion* on retroactivity, standing alone, is not necessarily the final word. Disputes over collection of tariffed charges often proceed before state agencies (when the charges are wholly intrastate) or in federal district court, and these disputes can only sometimes come before the Commission under 47 U.S.C. §§ 207 and 208 because the Commission does not entertain actions for unpaid tariffed charges. See *In the Matter of Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt From Access Charges*, 19 FCC Rcd 7457, 7471 ¶ 23 n.93 (2004) ("[T]he Commission does not act as a collection agent for carriers with respect to unpaid tariffed charges."); see also *Beehive Telephone, Inc. v. Bell Operating Cos.*, 10 FCC Rcd 10562 ¶ 37 & n.90 (1995) (same). In fact, Qwest's briefs pointed out that the federal district court for the District of Colorado was then adjudicating Qwest's claim against AT&T for tariffed charges for access provided to AT&T for prepaid calling card calls. Moreover, Qwest argued that here the Commission's retroactivity decision should enjoy no deference, and that

argument presumably would extend to the district court adjudication. Qwest's claim to standing (in so far as it indirectly addressed the point) was, as we understand it, essentially that it was currently injured by the *risk* that the court would defer to the opinion stated in the Order.

We were thus startled to learn—just the day before we were originally scheduled to hear arguments—that the District of Colorado had approved a stipulated dismissal of Qwest's claims against AT&T two months earlier. We learned this information *not* from Qwest, but from a letter sent by intervenor AT&T. Qwest later admitted that "[a]s this litigation had formed the basis for some of the factual and legal analysis in both Qwest's briefs to this Court and the Order on Review itself, the [stipulated dismissal] appears to raise the question of whether Qwest's appeal has been rendered moot." Letter from Counsel for Qwest to Mark Langer, Clerk, U.S. Court of Appeals for the D.C. Circuit (Sept. 20, 2007). Despite this recognition, Qwest provided no excuse for failing to bring this development to the immediate attention of this court, suggesting that its failure to do so was in fact inexcusable.

We nonetheless find that Qwest's petition for review is saved from potential mootness—and Qwest saved from potential sanctions—by Qwest's continuing dispute with Verizon over access charge liability related to the "Golden Retriever" menu-based card offered by Verizon's predecessor-in-interest MCI. While we are uncertain whether standing could rest on the mere prospect of a possible dispute whose outcome might depend on the Order's views on retroactivity, here the Commission's Order specifically reached out and touched the Golden Retriever service. See 21 FCC Rcd at 7294 ¶ 11, 7296 ¶ 15. It declared that the Golden Retriever Card was "a telecommunications service and therefore subject to interstate and intrastate access charges,"

but expressly denied the attempt by a local exchange carrier (not Qwest, but Frontier Telephone of Rochester) to obtain a declaratory ruling that it was entitled to access charges for services rendered before the effective date of the Order. *Id.* at 7307 n.121. This statement appears to foreclose with one hundred percent certainty any hope that the Commission would consider Verizon liable to Qwest for pre-Order access charges (e.g., in an action before it for the recovery of overcharges, see 47 U.S.C. §§ 203(c), 207-209), and to militate significantly against Qwest's success in litigation in federal district court or before state commissions or courts. We find these injuries sufficient to sustain Qwest's standing.

On to the merits. The Commission determined that its "decision that menu-driven calling cards offer telecommunications services and that their providers are subject to regulation as telecommunications carriers shall have prospective effect only." Order, 21 FCC Rcd. at 7307 ¶ 45. The Commission was not merely agnostic as to retroactive application; it set forth its express intent to relieve menu-driven card providers of the "burdensome" obligations imposed by statute upon telecommunications carriers, including liability to local exchange carriers for "access charges" arising from the use of their services. *Id.*; see also *id.* at 7307 n.121 (applying rule to Golden Retriever card). Thus the Commission purported to foreclose retrospective application of its own interpretation of the statute.

The reasoning the Commission offered to support its decision was contained in a single paragraph, the relevant part of which reads:

Unlike the case of cards using IP transport, the Commission's prior decisions did not clearly point in the direction of treating providers of menu-driven prepaid calling cards as telecommunications carriers. Indeed,

during the pendency of this proceeding, the Supreme Court released the *Brand X* decision, which informs the Commission's analysis in this Order. Given the lack of clarity in the law on this issue, both before and as a result of the NPRM, we are concerned that retroactive application of this *Order* to menu-driven prepaid calling cards would be so unfair to providers of such cards as to work a "manifest injustice." For example, we recognize that retroactive application of our decision would be burdensome for menu-driven prepaid calling card providers, in that the decision subjects them to access charges, Universal Service Fund contribution obligations, and the full panoply of Title II obligations. We also recognize that, given the state of the law at the time, parties may have relied on the assumption that they would not be subject to these burdens.

*Id.* at 7306-07 ¶ 45 (footnotes omitted).

Thus, the Commission found that retroactivity would work a manifest injustice, giving four reasons for that conclusion: (1) a baseline lack of clarity in the law, (2) a further obfuscation of the applicable law supposedly wrought by the Commission's NPRM, (3) the intervention and clarifying force of the Supreme Court's decision in *Brand X*, and (4) the possible reliance of "menu-driven prepaid calling card providers" on all this legal uncertainty.

We start with the presumption of retroactivity for adjudications. As we said recently, reviewing the Commission's decision to give retroactive application to its order on AT&T's "enhanced" prepaid calling cards,

Retroactivity is the norm in agency adjudications no less than in judicial adjudications. . . . For our part we have drawn a distinction between agency decisions that

> "substitut[e] . . . new law for old law that was reasonably clear" and those which are merely "new applications of existing law, clarifications, and additions." The latter carry a presumption of retroactivity that we depart from only when to do otherwise would lead to "manifest injustice."

*AT & T*, 454 F.3d at 332 (alteration and second omission in original) (citations omitted).

In reviewing agency decisions on retroactivity, it appears that we have generally shown little or no deference to agencies' rejection of claims that retroactivity produced manifest injustice, see *Retail, Wholesale*, 466 F.2d at 390; see also *Maxcell Telecom Plus*, 815 F.2d at 1554 (following *Retail, Wholesale* in a rulemaking context where the retroactivity issue is now moot because of *Bowen v. Georgetown University Hospital*), but have been quite deferential to decisions regarding the retroactive effect of agency action where retroactivity would not work a manifest injustice, see *AT & T*, 454 F.3d at 334; *Retail, Wholesale*, 466 F.2d at 393. None of the parties has offered any arguments that might justify any alteration of that structure (even if this panel had authority to make such an alteration, which it does not). Here, unusually, the Commission has simply offered no plausible grounds to overcome the presumption of retroactivity; its finding of manifest injustice is completely unconvincing, and it offers no other reason for precluding retroactive application of its statutory interpretation.

First, a mere lack of clarity in the law does not make it manifestly unjust to apply a subsequent clarification of that law to past conduct. Clarifications, which obviously fall on the no-manifest-injustice side of the line drawn in the above passage from *AT & T*, must presuppose a *lack* of antecedent clarity. They stand in contrast to rulings that upset settled

expectations—expectations on which a party might reasonably place reliance.  See, e.g., *AT & T*, 454 F.3d at 332 ("AT & T does not and indeed cannot point us to a settled rule on which it reasonably relied."); *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1111 (D.C. Cir. 2001) ("Because the object of the [petitioners'] reliance was neither settled . . . nor 'well-established,' we are skeptical that retroactive liability against the [petitioners] would actually impose a manifest injustice." (citation omitted)).  Clarifying the law and applying that clarification to past behavior are routine functions of adjudication.

Nor is the Commission on firmer ground in imputing a muddying effect to the NPRM or an enlightening effect to the *Brand X* decision.  The NPRM merely reinforced the general understanding that the relevant law was unsettled.  And while the Supreme Court's decision in *Brand X* may well have "inform[ed] the Commission's analysis" that menu-driven cards offered telecommunications services, Order, 21 FCC Rcd at 7307 ¶ 45, that decision *deferred to and affirmed* the Commission's own March 2002 interpretation of the relevant statutory definitions.  See *Brand X*, 545 U.S. at 997-1000.  The NPRM and *Brand X* decision are just further evidence of what the Commission already recognized: that the application of the statutory terms "telecommunications service" and "information service" to these prepaid calling cards was uncertain and subject to reasonable debate.

The Commission's analysis observes that "parties *may have* relied on the assumption that they would not be subject to the[] burdens [imposed on telecommunications carriers]." Order, 21 FCC Rcd at 7307 ¶ 45 (emphasis added).  Perhaps so.  But for reliance to establish manifest injustice, it must be reasonable—reasonably based on settled law contrary to the rule established in the adjudication.  The mere possibility that a party may have relied on its own (rather convenient)

assumption that unclear law would ultimately be resolved in its favor is insufficient to defeat the presumption of retroactivity when that law is finally clarified.

Here, the proper classification of services provided by various "enhanced" prepaid calling cards has been long the subject of active debate. In particular, the Commission has been scrutinizing IP-transport and menu-driven cards at least since AT&T's November 2004 letter to the Commission seeking a declaratory ruling classifying those prepaid calling card variants. As we have said in another context, once the issue was "expressly drawn into question . . . we do not see how the Commission could possibly find that [those objecting to retroactive application] reasonably relied upon [their view of the law]." *Pub. Serv. Co. of Colo. v. FERC*, 91 F.3d 1478, 1490 (D.C. Cir. 1996).

Finally, we note the Commission's complete disregard of the obvious fact that every loss that retroactive application of its statutory interpretation would inflict on providers of menu-driven card services is matched by an equal and opposite loss that non-retroactivity would inflict on access suppliers such as Qwest. The Commission having determined the liability for such access costs under its interpretation of the statute, we see no reason why the users should not pay in accord with that interpretation. Even if the particular circumstances of an individual case might conceivably support such forbearance (which the Commission nowhere suggests), that potential offers no reason for the Commission's attempt at a sweeping release from apparently applicable statutory obligations.

Thus, the Commission has offered only an unsustainable theory of manifest injustice to support its decision against retroactivity, pointing to nothing else in the record that would support a departure from the presumption of retroactivity. Accordingly, the Order must be vacated to the extent that it

foreclosed application of its substantive ruling in the calculation of access charges before the Order's issuance.

*So ordered.*