# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 6, 2017   Decided February 2, 2018

No. 17-7082

LEIDOS, INC., FORMERLY KNOWN AS
SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,
APPELLEE

v.

HELLENIC REPUBLIC,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01070)

*Neal Goldfarb* argued the cause and filed briefs for the appellant. *Max F. Maccoby* entered an appearance.

*William T. O'Brien* argued the cause and filed the brief for the appellee. *Allen B. Green* and *Ivan W. Bilaniuk* were with him on brief.

Before: HENDERSON, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge:* This case is a testament to the rise of the dollar—and the precipitous decline of the euro—over the last four years. In July 2013, Leidos, Inc. (Leidos)[1] won an arbitration award against the Hellenic Republic [2] resulting from security work it performed in connection with the 2004 Summer Olympic Games held in Athens, Greece. The award consisted of €39,818,298 in damages and $162,500 in costs. Upon receiving the award, Leidos promptly petitioned the United States District Court for the District of Columbia to confirm and enforce it. After approximately three years of intermittent stays, status updates, motions and parallel litigation in Greek courts, the district court confirmed the arbitration award and entered judgment—in euros—in favor of Leidos.

Pursuant to Federal Rule of Civil Procedure 59(e), Leidos then moved to convert the award into U.S. dollars based on the exchange rate ($1.3017 to €1) on July 2, 2013, the date of the original arbitral award. The district court granted the motion. Because the exchange rate had dropped 19.1 per cent from the award date to the judgment date ($1.0533 to €1 on January 6, 2017), the total dollar value of the conversion increased the value of the arbitral award by approximately $11.9 million. The Hellenic Republic appealed. For the following reasons, we conclude that the district court mistakenly granted Leidos's motion and we reverse.

---

[1] When it entered into the contract with the Hellenic Republic (and when it initiated this lawsuit), Leidos was named the Science Applications International Corporation. Its changed name does not carry any legal significance.

[2] The Hellenic Republic is popularly known as Greece.

3

**I.**

In May 2003, the Hellenic Republic contracted with Leidos to provide a public-safety infrastructure system for the 2004 Athens Summer Olympics. The contract was written in Greek and provided for payment in euros. After a series of disputes regarding the Hellenic Republic's acceptance of the infrastructure system, the parties agreed to a contract modification (Modification No. 5) that included certain dispute-resolution provisions, specifically:

> Any claim or dispute arising from or related to the current Contract or its interpretation is to be finally resolved by Arbitration according to the Rules of Arbitration of the International Chamber of Commerce (ICC) and shall be tried under Greek Law. Arbitration shall take place in Athens, Greece, by three Greek Arbitrators.

Joint Appendix (JA) 101. Modification No. 5 further provided that Greek was the language of the arbitration and that the result of the arbitration was final and binding on both parties. *Id.*

The parties' contractual disagreements continued after Modification No. 5 and, on June 16, 2009, Leidos filed a Request for Arbitration. The arbitral tribunal heard the case over eight days in May 2012. On July 2, 2013, the tribunal issued its final award, which ordered the Hellenic Republic to pay Leidos: (1) €39,818,298 in damages; (2) $162,500 in arbitration costs; and (3) simple interest of 6 per cent beginning July 11, 2013, the date the award was served on the Hellenic Republic. JA 19.

On July 12, 2013, Leidos filed a Petition to Confirm Arbitration and to Enter Judgment in the district court for the District of Columbia. On September 5, 2013, the Hellenic

Republic filed a parallel suit in the Athens Court of Appeals seeking to set aside the arbitration award. The Hellenic Republic subsequently answered Leidos's complaint in district court, alleging six affirmative defenses under the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* On March 28, 2014, the district court granted the parties' joint motion to stay proceedings pending the resolution of the Greek litigation. Several months later, Leidos submitted in district court two proposed orders seeking to confirm the award: one on September 8, 2014 and the other on December 17, 2014. The district court did not rule on either of the proposed orders, instead holding the case in abeyance while the Greek litigation ran its course.

While the case was stayed in the United States, the Greek litigation made its way through that judicial system. First, the Athens Court of Appeals set aside the arbitration award, reasoning that the parties' contract was tainted by the corruption of Leidos's subcontractor, Siemens. Leidos appealed that decision to the Greek Supreme Court, which unanimously reversed the Athens Court of Appeals and, on September 22, 2016, reinstated the arbitral award.[3]

On November 3, 2016, the district court asked the parties their positions on the effect of the Greek Supreme Court decision. Neither party mentioned currency conversion in their respective responses. On January 5, 2017, the court granted Leidos's Petition to Confirm the Arbitration Award and to Enter Judgment. The next day, the court clerk entered judgment in favor of Leidos in the amount of €39,818,298.

---

[3] The Greek Supreme Court remanded the case to the Athens Court of Appeals for a new hearing consistent with its decision. The hearing took place on November 16, 2017 and the result remains pending.

The judgment form made no mention of interest or costs. Thereafter, Leidos moved to correct the judgment under Rule 60(a) and to alter or amend the judgment under Rule 59(e). It requested $162,500 in costs, as awarded by the tribunal, as well as pre- and post-judgment interest as to damages and costs. It further requested that the court alter or amend the entry of judgment to convert the total award into U.S. dollars.

The district court granted Leidos's motion in full, correcting "clerical mistakes" under Rule 60 and curing "clear error" or "manifest injustice" under Rule 59(e). *In re Arbitration of Certain Controversies between Sci. Applications Int'l Corp. & Hellenic Republic*, 249 F. Supp. 3d 300, 302-03 (D.D.C. 2017). Regarding the clerical mistakes, the district court amended the judgment to include $162,500 in costs (as provided in the original arbitral award) plus $34,031.51 in interest on that sum. The court also awarded €8,115,607.64 in interest on the damages award itself. Applying Rule 59(e), the district court converted the entire award into U.S. dollars using the exchange rate in effect on July 2, 2013, the date of the arbitral award. The amended judgment totaled $62,731,104.80. Because the value of the euro had declined significantly against the dollar over the course of the litigation, converting the judgment increased its value by approximately $11.9 million. The Hellenic Republic now appeals only the conversion of the arbitral award under Rule 59(e).

## II.

We review the district court's decision granting Leidos's Rule 59(e) motion for abuse of discretion. *Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

In granting Leidos's motion, the district court committed two errors. First, the district court incorrectly concluded that our Rule 59(e) precedent did not apply to Leidos because it was not a "losing party." *In re Arbitration of Certain Controversies between Sci. Applications Int'l Corp. & Hellenic Republic*, 249 F. Supp. 3d at 302-03. Second, the court erred in concluding that it was manifestly unjust to award Leidos judgment in euros even though Leidos had expressly sought relief in euros at least three times and had not asked for dollars until its post-judgment motion. *Id.* at 304-05. In addition, the district court misinterpreted—and thus mistakenly relied on—our opinion in *Continental Transfert Technique Ltd. v. Federal Government of Nigeria*, 603 Fed. App'x 1 (D.C. Cir. 2015) (per curiam), which we address below.

Federal Rule of Civil Procedure 59(e) provides a limited exception to the rule that judgments are to remain final. *See Derrington-Bey v. Dist. of Colum. Dep't of Corrs.*, 39 F.3d 1224, 1225 (D.C. Cir. 1994). Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an "intervening change of controlling law"; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to "correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (quoting *Nat'l Tr. v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)). Although the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration or amendment of a judgment is nonetheless an extraordinary measure. *Id.*

We have held that Rule 59(e) motions are aimed at "reconsideration, not initial consideration." *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) (quoting *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th

Cir. 2007)). "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, pp. 127–128 (2d ed. 1995)). It is "not a vehicle to present a new legal theory that was available prior to judgment." *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012).

In the same vein, manifest injustice "does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. CIA*, 355 F.3d 661, 665 (D.C. Cir. 2004). In determining whether a decision could result in manifest injustice, we examine whether it would "upset settled expectations—expectations on which a party may reasonably place reliance." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007) (interpreting "manifest injustice" in context of retroactive FCC ruling). "[M]anifest injustice" requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015).

The district court erred, first, in articulating the Rule 59(e) standard. In focusing on our statement in *Kattan ex rel. Thomas v. District of Columbia* that Rule 59(e) does not permit a "*losing party* . . . to raise new issues that could have been raised previously," 995 F.2d 274, 276 (D.C. Cir. 1993) (emphasis added), the court reasoned that, because Leidos was not a "losing party," the prohibition on asserting—post-judgment—a previously available argument did not apply. In other words, the district court's articulation of Rule 59(e) allowed Leidos to assert a previously available legal theory

after judgment simply because it was the *prevailing* party. Its explanation recites that:

> [The Hellenic Republic] is correct that Leidos expressly asked, at a much earlier point in this long-running litigation, that the amount of Judgment . . . be stated in Euros. However, the fact that Leidos asked for the Judgment to be stated in Euros at that time does not decide the issue at this late date.

*In re Arbitration of Certain Controversies between Sci. Applications Int'l Corp. & Hellenic Republic*, 249 F. Supp. 3d at 302. The explanation utterly fails to account for the fact that Leidos's request could have—and should have—been made long "before judgment was entered." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *see Baker*, 554 U.S. at 486 n.5. Indeed, the district court's rationale does not seem to contemplate *any* limit on a *prevailing* party's doing a post-judgment *volte-face*.[4] The text of Rule 59(e) plainly does not differentiate between winners and losers. Fed. R. Civ. P. 59(e). Neither does our precedent. *See, e.g.*, *Patton Boggs*, 683 F.3d at 403 ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment."). The benefit of finality applies equally to all litigants. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (discussing historical reasons for promoting finality).

---

[4] *Kattan*'s "losing party" language is perhaps best interpreted as merely describing the moving party therein. *Kattan*, 995 F.2d at 275-76. The reference to a "losing party" also reflects the common-sense understanding that a losing party will file a Rule 59(e) motion more frequently than a prevailing party. A prevailing party rarely desires reconsideration or amendment.

Second, we conclude—contrary to the conclusion of the district court—that the judgment was consistent with "governing law" and that Leidos did not suffer any "manifest injustice" in receiving the relief it had explicitly and consistently requested. *Mohammadi*, 947 F. Supp. 2d at 78.

Historically, U.S. and English courts were reluctant to enter judgments in foreign currencies. *See In re Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1329 (7th Cir. 1992) (detailing history of currency conversion in federal court). In the years since the Congress amended the Coinage Act in 1982,[5] however, that trend has gradually shifted and courts in both countries now recognize that it is appropriate to enter judgment in foreign currency under some circumstances. *Id.*; *see* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 823 cmt. b (1987) (explaining shift in U.S. and English courts). Recent cases have endorsed judgment in a foreign currency if the petitioner requests payment in that currency. *See Cont'l Transfert*, 603 Fed. App'x at 4; *see also In re Amoco Cadiz Oil Spill*, 954 F.2d at 1328 ("Judgment in a foreign currency is

---

[5] Section 20 of the Coinage Act of 1792, formerly at 31 U.S.C. § 371, provided that the "money of account of the United States shall be expressed in dollars . . . ." Some courts interpreted this Act to mean that "American courts are permitted to render judgments only in dollars." *Int'l Silk Guild v. Rogers*, 262 F.2d 219, 224 (D.C. Cir. 1958). In 1982, however, the Coinage Act was reenacted without the "money of account" language and the legislative history indicates that it was "omitted as surplus." H.R. Rep. No. 97-651, 97th Cong., 2d Sess., at 146-47 (1982). Indeed, even before the 1982 amendment, some courts questioned whether courts were invariably required to enter judgments in dollars. *Baumlin & Ernst, Ltd. v. Gemini, Ltd.*, 637 F.2d 238, 244 (4th Cir. 1980) (enforcing consent order in Swiss francs notwithstanding Coinage Act).

especially attractive when the commercial activity took place in that currency."). In addition, District of Columbia law permits—and sometimes requires—a foreign-currency judgment. *See* D.C. Code §§ 15-901 *et seq.* Indeed, both parties accept that the district court was *permitted* to enter the original judgment in euros. Appellee's Br. 12-13 nn.4-5 (acknowledging that judgment in euros did not amount to "clear error"); Appellant's Br. 14 ("[T]he entry of the original judgment in euros was not erroneous at all, much less *clearly* erroneous . . . ."). Thus, the original judgment was not erroneously entered in euros such that it required Rule 59(e) correction or amendment.

Nor did the judgment prejudice Leidos. Leidos could have asked for dollars instead of euros at any time before judgment; it chose not to. The value of the euro is published daily on the foreign exchange market;[6] it was thus available to Leidos long before judgment and Leidos does not offer any reason for its delay in seeking currency conversion.[7] Instead, at least three times, Leidos *explicitly* requested judgment in euros: first, in its complaint and the proposed order that accompanied it, JA 20; next, in its September 8, 2014 submission of a proposed judgment, JA 559-60; and finally, in

---

[6] Current and historic foreign exchange rates are also published on the Federal Reserve's website, *see* Board of Governors of the Federal Reserve System, *Foreign Exchange Rates - H.10*, https://www.federalreserve.gov/releases/h10/current/, and courts routinely take judicial notice of exchange rates, *see In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 15 n.10 (1st Cir. 2008).

[7] Beginning on May 6, 2014, the euro began to fall in value against the dollar for approximately 10 months until it bottomed out on March 11, 2015 at $1.0552 to €1.

the proposed judgment it submitted on December 17, 2014, JA 561-62.[8]

Moreover, Leidos's delay was not without harm to the Hellenic Republic; it precluded the Hellenic Republic from effectively hedging against the risk of currency fluctuations. The fluidity of foreign exchange rates is a recognized feature of modern macroeconomics. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1336 (11th Cir. 2011) (discussing mechanics of foreign currency exchange contract). To guard against fluctuation risk, a party can buy a "futures" contract in a given currency. *See In re Amoco Cadiz Oil Spill*, 954 F.2d 1279, 1329 (7th Cir. 1992) (discussing hedging practice). Here, Leidos could have purchased a futures contract for dollars, promising payment in euros at a later date. Once the Hellenic Republic satisfied its judgment in euros, Leidos could have then traded in its futures position on the foreign exchange market and received the dollar value of the award. The same is true for the Hellenic Republic; it could have bought a dollars-to-euros futures contract. But Leidos's delay did not give the Hellenic Republic notice of a *need* to guard against currency fluctuation. *See id.* ("Although the value of the judgment may fluctuate, the parties' hedging can undo the effect. The highest objective is predictability."). The parties' contract was in euros, the arbitral award was in euros and Leidos repeatedly requested judgment in euros. Accordingly, the Hellenic Republic had a reasonable and

---

[8] As late as November 3, 2016, the district court gave Leidos an opportunity to request conversion when it asked "what, if anything [it] should do now that the Supreme Court of the Hellenic Republic has ruled." JA 7. Leidos remained mute regarding currency conversion.

"settled expectation[]" that it would satisfy the judgment against it in euros. *Qwest Services*, 509 F.3d at 540.

*Continental Transfer* is not to the contrary. 603 Fed. App'x 1. In that case, Continental won an arbitral award against the government of Nigeria. *Id.* The arbitral award was in foreign currency—Nigerian naira and British pounds—and Continental sought to enforce the award in district court. *Id.* at 2. Continental's complaint did not specify which currency it requested. *Id.* At summary judgment, Continental moved to confirm and enforce the award and asked that the judgment be converted to dollars. *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 162 (D.D.C. 2013), *aff'd*, 603 Fed. App'x 1 (D.C. Cir. 2015). The district court issued an order confirming and enforcing the arbitration award but failed to grant Continental's conversion request. *Id.* at 157. Promptly thereafter, Continental filed a post-judgment motion,[9] again seeking to convert the award into dollars. *Id.* The district court granted the motion and we affirmed. *Cont'l Transfert*, 603 Fed. App'x at 1. Our reasons for affirming the district court in *Continental Transfert* are straightforward and inapplicable to this case. In *Continental Transfert*, we converted the arbitral award into dollars primarily because "a judgment in a foreign currency should be issued *only when requested by the judgment creditor*." *Id.* at 4 (emphasis added). Although Continental had requested confirmation of its award, its complaint did not specify which currency it sought. *Id.* In those circumstances, we concluded "[s]ilence . . . is not a request" and we upheld the conversion to dollars. *Id.*

---

[9] Continental labeled its post-judgment motion as a "correction" under Rule 60(a) but we treated it as a motion to amend under Rule 59(e). *Cont'l Transfert*, 603 Fed. App'x at 4.

By contrast, Leidos was not silent; it explicitly requested judgment in euros in its complaint and its proposed orders, specifying that only costs be computed in dollars. *See, e.g.*, JA 22b (requesting €39,818,298 in euros and $162,500 in dollars). Moreover, unlike Continental, Leidos did not ask for conversion to dollars at summary judgment. Therefore, unlike Leidos's post-judgment motion, the Rule 59(e) motion in *Continental Transfert* was directed to "reconsideration, not initial consideration." *District of Columbia v. Doe*, 611 F.3d at 896. Accordingly, the typical framework of Rule 59(e) applied and the district court had wide discretion to reconsider its previous order. *Firestone*, 76 F.3d at 1208. That is simply not the case here. As our precedent makes clear, Rule 59(e) is not available to a party who "could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky*, 355 F.3d at 665.

Our opinion today does not require us to plumb the murky waters of currency conversion in federal court. *See Competex, S.A. v. Labow*, 783 F.2d 333, 336-37 (2d Cir. 1986) (discussing possible conversion dates for foreign currency judgments); *see also* RESTATEMENT (FOURTH) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 420 (updated 2017). We need only hold that, under Rule 59(e), a district court may not convert a judgment to dollars if the movant contracted in euros, received its arbitral award in euros, requested euros in its complaint and filed three proposed orders seeking euros, before reversing course post-judgment. Under these circumstances, it cannot be "manifestly unjust" to preserve Leidos's judgment in euros.

For the foregoing reasons, we reverse the district court and remand with instructions to reenter judgment in accordance with the arbitral award. In addition, Leidos is entitled to post-

judgment interest at the statutory rate set out in 28 U.S.C. § 1961.

*So ordered.*