# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 15, 2013               Decided July 2, 2013

No. 12-1124

THE CONFERENCE GROUP, LLC,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,
RESPONDENTS

CISCO WEBEX LLC,
INTERVENOR FOR PETITIONER

VERIZON AND VERIZON WIRELESS,
INTERVENORS FOR RESPONDENTS

On Petition for Review of An Order of
the Federal Communications Commission

*Ross A. Buntrock* argued the cause for petitioner. With him on the briefs was *Michael B. Hazzard*.

*Christopher J. Wright* argued the cause for intervenor Cisco WebEx LLC. With him on the briefs was *Brita D. Strandberg*.

*Joel Marcus*, Counsel, Federal Communications Commission, argued the cause for respondent. On the brief were

*Robert B. Nicholson* and *Nickolai G. Levin*, U.S. Department of Justice, Attorneys, and *Sean A. Lev*, General Counsel, Federal Communications Commission, *Peter Karanjia*, Deputy General Counsel, *Richard K. Welch*, Deputy Associate General Counsel, and *Laurel R. Bergold*, Attorney.

*Helgi C. Walker* argued the cause for intervenors Verizon, et al. With her on the brief were *Elbert Lin*, *Michael E. Glover*, and *Christopher M. Miller*.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In 2008 the Federal Communications Commission decided that the audio bridging services provided by InterCall, Inc. are properly classified as "telecommunications" under the Communications Act of 1934, as amended, and thereby obligate it and "similarly situated" providers to contribute directly to the Universal Service Fund ("USF"), 47 U.S.C. § 254(d). The Conference Group, joined by intervenor Cisco WebEx, contends that the Commission converted an unlawful decision by the administrator of the USF as to InterCall, Inc.'s contribution obligation into an industry-wide legislative rule without adequate notice or comment, in violation of section 553 of the Administrative Procedure Act ("APA"), and that the Commission's action was arbitrary and capricious because it ignored uncontroverted facts and legal precedent.

The Conference Group has standing to challenge the Commission's decision as procedurally unlawful rulemaking, but we conclude that there is no merit to that challenge. The Commission's decision involved a statutory interpretation that

could be rendered in the form of an adjudication, not only in a rulemaking.  Because the decision was an adjudication and the The Conference Group was not a party, it lacks standing to challenge the merits of that adjudication.  Although the Commission stated its decision would apply to "similarly situated" providers, that is true of all precedents.  And this court has held that the mere fact that an adjudication creates a precedent that could harm a non-party does not create the injury-in-fact required for Article III standing.  If the Commission applies its rule of decision for InterCall, Inc. to The Conference Group, The Conference Group can present its substantive arguments in its own adjudication.  Intervenor Cisco WebEx's lack of standing is *a fortiori* because it claims it is not similarly situated to InterCall, Inc. and thus can claim no injury as a consequence of the Commission's decision.  Accordingly, we deny The Conference Group's petition in part and dismiss it in part for lack of jurisdiction.

## I.

The Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq*. ("the Act"), defines two categories of regulated entities relevant here: telecommunications carriers and information-service providers. *See generally Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967, 975 (2005) ("*Brand X*").  The Act regulates the former as common carriers, and providers of telecommunications services are required to contribute to the USF.  47 U.S.C. § 254(d).  It also authorizes the Commission to impose additional regulatory obligations on non-common carriers under its Title I ancillary jurisdiction to regulate interstate and foreign communications.  *See Brand X*, 545 U.S. at 975 (citing 47 U.S.C. §§ 151–161).  The Act defines "telecommunications" as "the transmission, between or among points specified by the user, of information of the user's

choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(50). Thus, "telecommunications service" is "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." *Id.* § 153(53). In contrast, "information service" is "the offering of a capability for generating, . . . or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service." *Id.* § 153(24).

Section 254, on universal service, provides, in relevant part:

> Every telecommunications carrier that provides interstate *telecommunications services* shall contribute, on an equitable and nondiscriminatory basis, to the specific, predictable, and sufficient mechanisms established by the Commission to preserve and advance universal service. . . . Any other provider of *interstate telecommunications* may be required to contribute to the preservation and advancement of universal service if the public interest so requires.

*Id.* § 254(d) (emphases added). By regulation, the Commission announced that, in addition to "telecommunications services" providers such as common carriers, "[c]ertain other providers of interstate telecommunications . . . also must contribute to the universal service support mechanisms." 47 C.F.R. § 54.706(a). Specifically:

> Interstate telecommunications include, *but are not limited to*: (1) Cellular telephone and paging services;

5

(2) Mobile radio services; (3) Operator services; (4) Personal communications services (PCS); (5) Access to interexchange service; (6) Special access service; (7) WATS; (8) Toll-free service; (9) 900 service; (10) Message telephone service (MTS); (11) Private line service; (12) Telex; (13) Telegraph; (14) Video services; (15) Satellite service; (16) Resale of interstate services; (17) Payphone services; and (18) Interconnected VoIP services[;] (19) Prepaid calling card providers.

*Id.* (emphasis added). Required USF contributions are based on a provider's projected net end-user telecommunications revenues, *id.* § 54.706(b), and filed in accordance with the Telecommunications Reporting Worksheet (FCC Form 499), *id.* § 54.711(a), (c). Since 2002 the instructions accompanying the FCC Form 499 for annual filings have provided that "toll teleconferencing" is subject to direct USF contributions. *See* FCC Form 499-A Telecommunications Reporting Worksheet at 20 (Feb. 2002).

The Commission has delegated administration of the USF to the Universal Service Administrative Company ("USAC"), *see In re Changes to the Board of Directors of the National Exchange Carrier Association, Inc. and Federal-State Joint Board on Universal Service*, 12 FCC Rcd. 18400, 18407 ¶ 11 (1997) ("*Second Order on Reconsideration*"). It has no policy or interpretive role, *see* 47 C.F.R. § 54.702(c), and must seek guidance from the Commission where the Act or the Commission's rules are unclear or do not address a particular situation, *id*. Upon appeal of the USAC's contribution decisions, the Commission conducts *de novo* review of "novel questions of fact, law, or policy." *Id.* § 54.723(b).

In 2007, the USAC initiated an audit of InterCall, Inc. for the purpose of determining whether it owed USF contributions. As self-described, InterCall, Inc. offers an audio bridging service that "allows multiple end users to communicate and collaborate with each other using telephone lines" by "link[ing] multiple communications together and feed[ing] to each station a composite audio input minus the user's own audio." *See* In the Matter of Request for Review by InterCall, Inc. of Decision of the Universal Service Administrator at 4, CC Docket No. 96-45 (Feb. 1, 2008) ("Request for Review"). "The audio bridge also performs conference validation functions, collects billing and participant information . . . and enables numerous conference control features, including recording, delayed playback, mute and unmute of callers and operator assistance." *Id.* InterCall, Inc. provides a "stand-alone" audio bridge service and "purchases toll-free, international and/or local number-based services from one or more telecommunications vendors" in order to obtain the telecommunications input required to operate its service. *Id.* at 5.

The USAC found that the audio bridging services provided by InterCall, Inc. are toll teleconferencing services subject to direct USF contribution obligations. *See* Letter from USAC to Steven A. Augustino, Esq. (Jan. 15, 2008) ("USAC Decision"). InterCall, Inc. sought review by the Commission and a stay, arguing that the USAC acted beyond its authority, and that InterCall, Inc.'s audio bridging service is an information service that is not obligated to make USF payments. *See* Request for Review at 1, 6-10. It argued that the Commission had to proceed by rulemaking to modify audio bridging providers' USF contribution requirements, *id.* at 23-25, and, alternatively, that even if audio bridging services were telecommunications, InterCall, Inc. and other stand-alone audio bridging service providers are not subject to common carrier regulations and thus not subject to § 254(d)'s mandatory contribution obligations, *see*

*id.* at 12-17. The Commission issued a public notice on February 14, 2008, seeking comment on InterCall, Inc.'s request for review of the USAC Decision and a stay. Comments by interested parties were due, and comments were received, by February 25, 2008 as were reply comments due, and in fact received, by March 3, 2008.

The Commission denied in part and granted in part InterCall, Inc.'s request for review. *In re Request for Review by InterCall, Inc. of Decision of Universal Service Administrator*, 23 FCC Rcd. 10731 (2008) ("*InterCall Order*"). The Commission found that "the audio-bridging services InterCall provides are equivalent to teleconferencing services and are 'telecommunications' under the Telecommunications Act of 1996 (1996 Act) and the *Universal Service First Report and Order*." *InterCall Order,* 23 FCC Rcd. at 10731 ¶ 1 (citing *Federal-State Joint Board on Universal Service*, 12 FCC Rcd. 8776 (1997) ("*Universal Service First Report and Order*"), *aff'd in part, rev'd in part, remanded in part sub nom, Texas Office of Public Utility Counsel v. FCC*, 183 F.3d 393 (5th Cir. 1999), *cert. denied*, 530 U.S. 1210 (2000), *cert. dismissed*, 531 U.S. 975 (2000)). It explained that such audio bridging services are properly classified as "telecommunications" because "the purpose and function of the bridge is simply to facilitate the routing of ordinary telephone calls." *Id.* at 10735 ¶ 11. As it had "previously determined in performing a similar analysis," the Commission observed that "this results in no more than the creation of the transmission channel chosen by the customer." *Id*. (citing *In re North American Telecommunications Association Petition for Declaratory Ruling Under § 64.702 of the Commission's Rules Regarding the Integration of Centrex, Enhanced Services, and Customer Premises Equipment*, ENF 84-2, Mem. Op. & Order, 101 FCC 2d 349, 363 ¶ 31 (1985) ("*No. Am. Telecomm. Petition*")).

The Commission further found that the add-on "features offered in conjunction with InterCall's service are not 'integrated,'" *id.*, and thus "do not change a service from telecommunications to an information service," *id.* at 10735 ¶ 12. Such "features perform validation functions, collect billing and participant information, and enable the participants to record, delete playback, mute and unmute, and access operator assistance," *id.* (citing *In re Regulation of Prepaid Calling Card Services*, 21 FCC Rcd. 7290, 7295-96 ¶¶ 14-15 (2006) ("*Prepaid Calling Card Order*")), and "do not alter the fundamental character of InterCall's telecommunications offering so that the entire offering becomes an information service," *id.* at 10735 ¶ 13. Rather, "[c]onsistent with the decision in the *Prepaid Calling Card Order*, these separate capabilities are part of a package in which the customer can still conduct its conference call with or without accessing these features." *Id.* They "therefore, are not sufficiently integrated into the offering to convert the offering into an information service." *Id.* Because "[p]roviders of [telecommunications] services must contribute directly to the USF based on revenues from these services," the Commission denied InterCall, Inc.'s request to reverse the USAC Decision in that regard. *Id.* at 10731 ¶ 1.

The Commission granted InterCall, Inc.'s request for review insofar as the USAC had required contributions based on past revenues, and instead chose to apply its decision on a prospective basis, partly in view of the lack of clarity regarding the direct contribution obligations of stand-alone audio bridging service providers. *Id.* at 10738 ¶ 24. The Commission directed the USAC "to implement the findings in this order with respect to all audio bridging service providers," *id.* at 10739 ¶ 25, "and reiterate[d] that all similarly situated providers, i.e., stand-alone teleconferencing providers as well as integrated teleconferencing providers, are, at a minimum, providers of telecommunications

for the purposes of contributing to the [USF] . . . ." *Id.* at 10739 ¶ 26. InterCall, Inc. was ordered to "contribute directly to the USF beginning as of the calendar quarter immediately following the next scheduled FCC Form 499-Q[uarterly] filing after the release date of this order." *Id.* at 10731 ¶ 1. The Commission "further direct[ed] USAC to ensure that all similarly situated audio bridging service providers contribute directly to the USF beginning as of this same time frame." *Id.*

Other audio bridging service providers, but not InterCall, Inc., petitioned for reconsideration and clarification. After providing public notice and receiving comments, the Commission denied the petitions. *In re Universal Service Contribution Methodology*, 27 FCC Rcd. 898 (2012) ("*Reconsideration Order*"). The Conference Group, joined by intervenor Cisco WebEx, petitions for review of the *InterCall Order*, invoking the court's jurisdiction under 47 U.S.C. § 402(a).

**II.**

As a threshold matter, the court must address whether petitioner The Conference Group and intervenor Cisco WebEx have standing to challenge the *InterCall Order*, as it implicates our jurisdiction. *See Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (citing *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998). Neither was the specific company whose audio bridging service was addressed in the *InterCall Order*, and The Conference Group and Cisco WebEx each has the burden of establishing its standing. *See Am. Library Ass'n*, 401 F.3d at 492–93 (citing *Sierra Club*, 292 F.3d at 899–901). Of the three elements of standing under Article III of the U.S. Constitution — injury-in-fact, causation,

and redressability — the Supreme Court has instructed that the first requires a showing of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). If The Conference Group or Cisco WebEx has shown the requisite injury, that it has shown the other two elements is not in doubt here.

We hold that The Conference Group has standing to challenge the Commission's decision as procedurally unlawful rulemaking, but lacks standing to challenge the merits of the decision adopted in the *InterCall Order* if it was an adjudication.

In contending that the Commission engaged in unlawful rulemaking, The Conference Group states that it "is 'similarly situated' to InterCall, Inc., . . . the immediate subject of both the USAC determination and the [*InterCall*] [*O*]*rder* at issue in this case," Pet'r. Br. at 4, as it too "provides audio, web, and video conferencing services which allow multiple parties to communicate with each other through an audio bridging device," *id.* at iv. It claims that it has suffered a concrete injury because the *InterCall Order* "erroneously requires The Conference Group now to make direct payments to the USF as a provider of 'telecommunications service' based upon its conference bridging service revenues, an obligation that has significantly increased the cost of The Conference Group's overhead." *Id.* at 14–15. For purposes of standing, the court must assume The Conference Group would prevail on the merits of its claim that the *InterCall Order* "improperly imposed new legislative rules on the entire conference bridging industry without providing the notice and comment safeguards required by Section 553 of the APA," *id.* at 25. *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). So understood, The Conference

Group has identified a cognizable harm to it as a result of the *InterCall Order* in the form of additional financial costs and regulation. *See Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998). This injury-in-fact, its causation and redressability show that The Conference Group has Article III standing to challenge the *InterCall Order* as unlawful rulemaking. The Conference Group has also established that it has prudential standing, for "'the interest it seeks to protect is arguably within the zone of interests to be protected or regulated by the statute . . . in question' or by any provision 'integral[ly] relat[ed]' to it." *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 179 (D.C. Cir. 2012) (quoting *Nat'l Petrochem. Refiners Ass'n v. EPA*, 287 F.3d 1130, 1147 (D.C. Cir. 2002) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970))); *see Kowalski v. Tesmer*, 543 U.S. 125, 129–130 (2004) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

The Conference Group lacks Article III standing, however, to challenge the merits of the *InterCall Order* if it was an adjudication. The court has rejected the view that "the mere potential precedential effect of an agency action affords a bystander to that action a basis for complaint." *Shipbuilders Council of Am. v. United States*, 868 F.2d 452, 457 (D.C. Cir. 1989); *see Am. Family Life Assurance Co. v. FCC,* 129 F.3d 625, 629 (D.C. Cir. 1997) (quoting *Radiofone, Inc. v. FCC*, 759 F.2d 936, 939 (D.C. Cir. 1985) (Scalia, J., sep. op.)); *Sea-Land Serv.*, 137 F.3d at 648; *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 838 (D.C. Cir. 1985). Because The Conference Group's claimed injury was due merely to the unfavorable precedent created by the *InterCall Order*, its "plea is essentially, a request for judicial advice — a declaration that a line of agency rulings should henceforth have no precedential effect." *Shipbuilders Council of Am.*, 868 F.2d at 456.

Although "merely foreseeable future litigation resulting from a statutory interpretation that an agency has adopted in an adjudication is 'alone,'— i.e., without more — too speculative to satisfy Article III's injury-in-fact requirement," *Teva Pharmaceuticals USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313 (D.C. Cir. 2010) (citing *Sea-Land*, 137 F.3d at 648), there are circumstances where the court has "allowed a party to challenge in advance an agency policy adopted via adjudication when the prospect of impending harm was effectively certain," *id*. at 1314. For instance, Teva had sought a declaratory judgment in the district court for a mandatory injunction that the Food and Drug Administration ("FDA") grant its generic drug application so as to give Teva a statutory six-month period of market exclusivity. Absent that grant Teva faced immediate competition from other generic drug manufacturers with no possibility of an adequate remedy on appeal. The court held that Teva had standing to challenge FDA's statutory interpretation because "[a]ny imminent deprivation of Teva's allegedly deserved exclusivity would be directly attributable to the FDA's statutory interpretation," and a declaratory judgment would redress its injury. *Id.* at 1312.

Notably, in *Teva*, the FDA's policy had been announced in previous adjudications but Teva was not appealing the adjudication of another party, as The Conference Group seeks to do here. Rather, Teva brought its own action in the district court. Moreover, in *Teva* the plaintiff could "point[] to a particular imminent application of the disputed agency policy . . . , the firmness of which is not in dispute, on a fast-arriving date certain." *Id*. at 1313. Here, The Conference Group does not identify any imminent Commission enforcement action against it. Finally, if the Commission decides to apply the rule of decision in the *InterCall Order* to The Conference Group, The Conference Group has the option to raise its substantive arguments in its own adjudication. In *Teva*, by contrast, the

imminent threat was not the FDA's decision but third-party competition whose effects on the market a reviewing court would be unable to unscramble, and it seems unlikely that Teva could have obtained a stay to stop this presumably lawful third-party conduct that the FDA declined to block. The situation here is quite different, for The Conference Group can raise its substantive argument before being forced to contribute to the USF.

Cisco WebEx's lack of standing to challenge both the method of adopting and the merits of the *InterCall Order* is *a fortiori*. Cisco WebEx states that "[t]he [*InterCall*] *Orders* addressed a service . . . that differs significantly from WebEx's service, as InterCall's service provides only audio bridging and does not include any of the other advanced capabilities [provided by Cisco WebEx]." Cisco WebEx Intervenor Br. at 3; *see* Cisco WebEx Rule 28(j) letter at 2 (Apr. 11, 2013). If it is not "similarly situated" to InterCall, Inc., then it can claim no injury from those orders. Cisco WebEx's brief is silent on the question of whether it has standing, *but see Sierra Club*, 292 F.3d at 900, and states, as relevant, only that it "is concerned that the [*InterCall*] *Orders* may have adopted a classification standard that, if given precedential value, would lead to improper future classification decisions," *id*. at 3. Before the Commission its parent corporation similarly stated regarding the *InterCall Order*: "[W]e think it is clear that the Commission did not *sub silentio* narrow or modify its long-standing tests for whether a service is functionally integrated and 'alters the fundamental character of [a] telecommunications offering,'" and suggested only that "the Commission would do well to re-emphasize that it was merely applying existing law, not rewriting it." Comments of Cisco Systems, Inc. at 4 (Sept 18, 2008) (quoting *InterCall Order*, 23 FCC Rcd. at 10735 ¶ 13). These comments underscore the speculative nature of Cisco WebEx's "concern[]." As this court stated in *Capital Legal*

*Foundation v. Commodity Credit Card Corporation*, 711 F.2d 253, 258 (D.C. Cir. 1983), a "sincere, vigorous interest in the action challenged, or in the provisions of law allegedly violated, will not do to establish standing" because to satisfy Article III standing there must be an injury-in-fact. Cisco WebEx has shown no "concrete and particularized" or "no[n] conjectural" injury, *Lujan*, 504 U.S. at 560, stemming from the *InterCall Order*.

Because neither petitioner The Conference Group, nor Cisco WebEx as intervenor in support of petitioner, has standing to challenge the merits raised in another party's case, it follows that defendant intervenor Verizon and Verizon Wireless, which seeks to appear only to defend the merits of the Commission's decision in the *InterCall Order*, cannot have standing either.

## III.

The Conference Group contends that the Commission converted an unlawful decision by the USAC as to one audio bridging provider's contribution obligation into an industry-wide legislative rule imposing new substantive duties on all audio bridging service providers without adequate notice and comment, in violation of APA section 553. For the following reasons, we hold that the statutory interpretation by the Commission in the *InterCall Order* was neither a legislative nor an interpretative rule. Rather it was simply an interpretation given in the course of an informal adjudication. *Cf. Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 95–96 (D.C. Cir. 2002); *Harborlite Corp. v. ICC*, 613 F.2d 1088, 1093 n.11 (D.C. Cir. 1979).

In interpreting and administering its statutory obligations under the Act, the Commission has very broad discretion to decide whether to proceed by adjudication or rulemaking. *See*

15

*Qwest Services Corp. v. FCC*, 509 F.3d 531, 536 (D.C. Cir. 2007); *Time Warner Entm't Co. v. FCC*, 240 F.3d 1126, 1141 (D.C. Cir. 2001); *see also* 47 U.S.C. § 154(j).  The *InterCall Order* has none of the hallmarks of legislative rulemaking that this court has identified, such as amending a prior legislative rule or explicitly invoking the Commission's general legislative authority.  *See Am. Mining Congress v. MSHA*, 995 F.2d 1106, 1112 (D.C. Cir. 1993); *Fertilizer Institute v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991). In concluding that InterCall, Inc. was required to make direct payments to the USF, the Commission relied primarily on the statutory definitions of "telecommunications" and "information service" as interpreted in its *Universal Service Orders* and implementing regulations. *See InterCall Order*, 23 FCC Rcd. at 10731-32 ¶¶ 2-3 (citing *Universal Service Orders First Report and Order*, 12 FCC Rcd. at 9183-84 ¶ 795, 9207 ¶¶ 846-47; *Second Order on Reconsideration*, 12 FCC Rcd. at 18499-513, Appendix A). (In the former, the Commission extended the USF contribution obligation to private providers of interstate telecommunications, *see Universal Service First Report and Order*, 12 FCC Rcd. at 9183-84 ¶ 795; the latter  set forth how the amount of the contribution is calculated and filed, *see Second Order on Reconsideration*, 12 FCC Rcd. at 18499-513, Appendix A.) The Commission also relied on its relevant classification precedent, including that addressing when add-on features change "transmission service" into an "information service."  *See InterCall Order*, 23 FCC Rcd. at 10735 ¶ 13 (citing *Prepaid Calling Card Order*, 21 FCC Rcd. at 7295-96 ¶¶ 14-15); *Reconsideration Order*, 27 FCC Rcd. 898, 903-04 ¶¶ 12-13 (same).

The Commission thus proceeded as it had in the order under review in *AT&T v. FCC*, 454 F.3d 329, 333 (D.C. Cir. 2006), where the court viewed the Commission's order classifying AT&T's prepaid calling cards for the first time to be an

adjudication. There, the court concluded that, as here, "[t]he Commission's rulings reflect a highly fact-specific, case-by-case style of adjudication." Here too, the Commission's classification order "is simply the latest application of this approach," *id.*

The only remaining question is whether the Commission's inclusion of the "similarly situated" phrase in the *InterCall Order*, 23 FCC Rcd. at 10731 ¶ 1, transmutes that adjudication into a rulemaking. It does not. Without the phrase, the precedential effect of the order would be the same. "[T]he nature of adjudication is that similarly situated non-parties may be affected by the policy or precedent applied, or even merely announced in dicta." *Goodman v. FCC*, 182 F.3d 987, 994 (D.C. Cir. 1999); *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 292 (1974); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765–66 (1969) (plurality opinion); *id*. at 772 (concurring opinion). Similarly, the statements in paragraphs 25 and 26 of the *InterCall Order*, on which counsel for The Conference Group focused during oral argument, elaborate upon the Commission's statutory interpretation of when a stand-alone service like InterCall, Inc.'s is subject to direct USF contributions, but represent no more than an interpretative precedent for the Commission to apply. The fact that an order rendered in an adjudication "may affect agency policy and have general prospective application," *New York State Comm'n on Cable Television v. FCC*, 749 F.2d 804, 814 (1984) (quoting *Chisholm v. FCC*, 538 F.2d 349, 365 (D.C. Cir. 1976)), does not make it rulemaking subject to APA section 553 notice and comment. The Commission, accordingly, could properly proceed by adjudication in addressing for the first time the proper classification of audio bridging service provided by InterCall, Inc., *cf. Bell Aerospace*, 416 U.S. at 292–93, and was not required to provide more notice than it did. The APA's notice and comment requirements do not apply (unless required by

statute) to "interpretative rules" or "general statements of policy." 5 U.S.C. § 553(b)(3)(A).

Accordingly, because the Commission rendered its classification interpretation by adjudication rather than legislative rulemaking, and because The Conference Group was not a party to that adjudication and fails to show it has standing to object to the merits of the adjudication, we dismiss in part and deny in part The Conference Group's petition for review.