# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 9, 2023          Decided August 9, 2024

No. 22-7110

INTERNATIONAL UNION, UNITED MINE WORKERS OF
AMERICA,
APPELLANT

JAMES ASBURY, ET AL.,
APPELLEES

v.

CONSOL ENERGY INC., AND ITS WHOLLY OWNED SUBSIDIARIES,
ET AL.,
APPELLEES

———

Consolidated with 22-7115

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:20-cv-01475)

———

*Kevin Fagan* argued the cause for appellant/cross-appellee. With him on the briefs was *Deborah Stern*.

*John R. Woodrum* argued the cause and filed the briefs for appellees/cross-appellants.

Before: MILLETT and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: A member of the United Mine Workers of America arbitrated a dispute against Consol Energy, Inc. He won. Afterwards, the Union sued to confirm that arbitration award. In a counterclaim, Consol and its subsidiaries sought to vacate the award.

Neither claim belongs in federal court. The Union has identified no valid source of federal subject matter jurisdiction. As for the counterclaim, Consol has ceased to exist, and its subsidiaries lack standing.

## I. Background

The United Mine Workers of America signed a collective-bargaining agreement with several coal-mining subsidiaries (the "Subsidiaries") of a company called Consol Energy, Inc. — though not with Consol itself. For our purposes, two parts of the agreement matter. First, the parties agreed to arbitrate grievances. And second, the Subsidiaries promised health benefits to certain miners for life. According to the Union, the Subsidiaries cannot unilaterally reduce those benefits even if they no longer mine coal.

Consol served as the Subsidiaries' health-plan administrator. When the agreement's expiration date approached, Consol sent a letter to miners formerly employed

by the Subsidiaries. The letter said Consol was considering changes to their benefits after the agreement expired.

Consol's letter wasn't warmly received. A retired miner filed an arbitration grievance against Consol, and with the Union's support, he won. The arbitrators concluded that they had jurisdiction (even though unlike its subsidiaries Consol never signed the now-expired collective-bargaining agreement) and that Consol's proposed benefit changes would violate the agreement. So the arbitrators issued an award that said Consol cannot make those unilateral changes.

The dispute did not end there. Instead, the Union sued Consol and its Subsidiaries in district court to confirm the arbitration award. Consol and its Subsidiaries counterclaimed against the Union, seeking to vacate the award. The two suits were eventually consolidated.

Before the district court reached a decision, Consol split in half and ceased to exist. One of Consol's two successors was joined to the suit; that successor was later dismissed because it had no connection to coal mining.[1] The other Consol successor, which is the new parent of the Subsidiaries, was never joined to the suit. For their part, the Subsidiaries continued to exist, continued to sue the Union, and continued to be sued by the Union.

In the end, the district court gave each side a partial victory. It dismissed the Union's confirmation claim for lack of standing. It reasoned that the Union wasn't injured because the collective-bargaining agreement wasn't violated: Though Consol *proposed* to modify benefit levels, Consol never actually did so. As for the Subsidiaries' counterclaim, the

---

[1] That dismissal was not appealed.

district court declined to vacate the arbitration award after reaching the merits.

Both parties appealed.

## II. The Union's Claim

We start with the Union's appeal. Whether or not the district court's dismissal for lack of standing was correct, the court lacked jurisdiction for a different reason. The Union identified § 301(a) of the Labor Management Relations Act, codified at 29 U.S.C. § 185(a), as the sole source of federal subject-matter jurisdiction — but § 301(a) does not apply to the Union's claim.[2] *See* 29 U.S.C. § 185(a).

Section 301(a) authorizes certain federal suits "for *violation of contracts* between an employer and a labor organization." *Id.* (emphasis added). But in *Textron Lycoming Reciprocating Engine Division, AVCO Corp. v. Automobile Workers*, the Supreme Court held § 301(a) does not authorize suits contemplating a future contract violation. 523 U.S. 653, 656-57 (1998).

In *Textron*, a union sued Textron in federal court under § 301(a), alleging that Textron fraudulently induced that union to sign a collective bargaining agreement. *Id.* at 655. *Textron* held that federal courts lack jurisdiction under § 301(a) to hear suits when "the Union's complaint alleges no violation of the collective-bargaining agreement." *Id.* at 661; *see also id.* at 658 ("Indeed, as far as the Union's complaint discloses, both

---

[2] *See Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.").

parties are in absolute compliance with the terms of the collective-bargaining agreement. Section 301(a) jurisdiction does not lie over such a case."); *id.* at 657 ("In this context, the word 'for' has an unmistakably backward-looking connotation . . . .").

In our case, the Union's complaint is materially indistinguishable from the complaint in *Textron*. The Union here concedes that it has not alleged a contract violation — just as the *Textron* plaintiffs did not allege a violation.[3] Rather, the Union anticipated that Consol would violate the collective-bargaining agreement in the future, and the Union sought to confirm an arbitration award prohibiting that future conduct.[4]

---

[3] *See International Union, United Mine Workers of America v. Consol Energy Inc.*, 2022 WL 2643531, at \*3 (D.D.C. July 8, 2022) ("In fact, the Union concedes that it does not assert a pre-Award contract violation or a post-Award violation of the award itself.") (cleaned up); *see also* JA 352-68 (Third Amended Complaint) (not alleging a contract violation).

On appeal, the Union tries to recharacterize several letters that Consol sent (after the miner's grievance was filed) as contract violations. *See* Union Br. at 22-24, 36. We will not entertain that argument. The Union previously "concede[d]" that there was no contract violation, even though it had previously discussed these same letters in its complaint. *Consol Energy Inc.*, 2022 WL 2643531, at \*3; JA at 362-63. In any event, the arbitration award exclusively discussed Consol's pre-grievance conduct and never mentioned these letters. JA 369-79.

[4] One distinction between our case and *Textron* is that *Textron* did not involve an underlying arbitration award. But since the award in our case never refers to a contract violation, it is of no help to the Union. JA 369-79. Instead, the award further confirms that, like *Textron*, the Union's suit is not one "for violation of contracts." 29 U.S.C. § 185(a).

Because § 301(a) does not authorize suits "filed with a view to a future contract violation," § 301(a) does not authorize the Union's claim. *Id.* at 657 (cleaned up). And because the Union has identified no other source of subject-matter jurisdiction, the district court properly dismissed the claim.

## III. The Subsidiaries' Counterclaim

We turn next to the Subsidiaries' counterclaim, which sought to vacate the arbitration award. The district court reached the merits, but "we bear an independent obligation to assure ourselves that jurisdiction is proper." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008); *see* U.S. Const. art. III, § 2 ("Cases" and "Controversies"). Because the Subsidiaries have not shown how they are injured by an arbitration award to which they are not a party, they lack standing to challenge it.

Like any plaintiff, counterclaimants "must demonstrate standing for each claim." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (cleaned up). That means the Subsidiaries must show "(1) an injury-in-fact, (2) causation, and (3) redressability." *Kapur v. FCC*, 991 F.3d 193, 196 (D.C. Cir. 2021).

As for the first requirement, not every alleged injury creates standing. The Subsidiaries' injury must be "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

The Subsidiaries have not shown any of that. Far from concretely injuring the Subsidiaries, the award does not even name them. *See* JA 369-79; Oral Arg. Tr. at 8 (the Union

conceding that the Subsidiaries "are not named in the award"). And as the Subsidiaries often point out, the award requires nothing of them. *See* Oral Arg. Tr. at 41, 42, 43, 47, 49, 50, 53, 55 (Subsidiaries asserting that the award does not bind them).

True, the arbitration award might have injured Consol, the Subsidiaries' former parent and health-plan administrator. But Consol no longer exists — and the Subsidiaries cannot maintain the claim in its place.

To see why they can't, recall that Consol dissolved into two successors. One was dismissed. The other — the new parent of the Subsidiaries, which may also be their health plan administrator — was never joined to this suit. *See id.* at 10-12, 40-41.[5]

In addition, the Subsidiaries' injury is speculative. Their concern is that the award's legal conclusions may be used against them if they arbitrate in the future. *Id.* at 49-51, 54. But that theory requires quite a chain of "maybes." Maybe the Subsidiaries will someday become their own plan administrators; maybe they will unilaterally reduce benefits; maybe the Union will file another arbitration grievance; and maybe the arbitrator will apply the Consol award's legal conclusions against the Subsidiaries. Or maybe not. After all, the Subsidiaries weren't parties to the award; it doesn't name them; and they say the collective-bargaining agreement allows arbitrators to reconsider past awards.[6] Regardless, "the mere

---

[5] We express no opinion on whether the Subsidiaries' new parent or health plan administrator would have had standing to challenge the arbitration award.

[6] *See* Oral Arg. Tr. at 51 (Subsidiaries stating that "an arbitrator is not bound to follow a . . . prior arbitration decision in the way that

fact that an adjudication creates a precedent that could harm a non-party does not create the injury-in-fact required for Article III standing." *Conference Group, LLC v. FCC*, 720 F.3d 957, 959 (D.C. Cir. 2013).

Because the Subsidiaries have not shown an injury that is both concrete and imminent, they lack standing to raise their counterclaim.

\*     \*     \*

No party in this appeal has shown that federal courts have jurisdiction over its claim. So we affirm the district court's dismissal of the Union's claim. We also vacate the district court's orders to the extent they decided the Subsidiaries' counterclaim on the merits, and we remand the Subsidiaries' counterclaim with instructions to dismiss it for lack of standing.

*So ordered*.

---

judges would be by other decisions of panels in this Court"); *cf.* Union Br. at 4 ("Each [collective-bargaining agreement] has included language stating that the 'decisions of the Trustees shall be final and binding *on the parties*.'") (cleaned up and emphasis added).